JERRY McCARTHY HIGHLAND CHEVROLET COMPANY,
INC., *v.* DEPARTMENT OF REVENUE.

1. Appeal and Error—Scope of Review—State Board of Tax Appeals—Circuit Court.
   The statute relating to appeals from the State board of tax appeals to the circuit court is intended to limit the judicial review solely to questions of law, a fact recognized by regulations of the department of revenue (CL 1948, § 205.9; 1954 Administrative Code, R 205.91).

2. Taxation—Sales Tax—Tangible Property—Delivery—Title—Possession—Local Authority—Questions of Fact.
   The questions of delivery, title, possession, and so-called "local activity" with reference to imposition of the State sales tax upon sales of tangible property are essentially questions of fact, or ultimate fact, determinable by the State board of tax appeals, which must be found before any ultimate legal conclusions, such as tax liability, can follow (PA 1944, No 167, as amended).

3. Same—Sales Tax—Processing—Tractors.
   The State board of tax appeals did not commit error of law in concluding that tractors were not subject to sales tax in this State, where it appears that they were brought from factory to another city in this State so that a processor could attach a "fifth wheel" connecting device mounted on the rear for attachment of trailers and to do other work before the tractors and trailers were attached and the entire units transported by various common carriers to out-of-State points designated by the buyer (PA 1933, No 167, as amended).

---

References for Points in Headnotes
[1, 5]  42 Am Jur, Public Administrative Law § 210.
[1, 4, 5]  42 Am Jur, Public Administrative Law § 211.
[2]  47 Am Jur, Sales and Use Taxes § 24.
[3]  47 Am Jur, Sales and Use Taxes § 16.

4. Constitutional Law—Courts—Administrative Agency.
The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative agency whose action is reviewed.

5. Appeal and Error—State Board of Tax Appeals—Scope of Review by Circuit Court.
The State board of tax appeals has been clothed with broad powers in determining the facts on appeals from the department of revenue and has restricted the circuit court review of the board's determinations to questions of law (CL 1948, § 205.9).

Appeal from Ingham; Coash (Louis E.), J. Submitted June 7, 1957. (Docket No. 40, Calendar No. 46,806.)  Decided March 6, 1958.

Petition by Jerry McCarthy Highland Chevrolet Company, Inc., a Delaware corporation, to void an assessment of sales tax by the Michigan Department of Revenue. State Board of Tax Appeals made determination of no tax liability, following which Ingham circuit court ordered such decision voided and assessment made. Plaintiff appeals. Reversed and determination of no tax liability reinstated.

*Murray & Murray (Walter J. Murray,* of counsel), for plaintiff.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistants Attorney General, for defendant.

Voelker, J.  The Michigan department of revenue made a sales tax assessment against the Jerry McCarthy Highland Chevrolet Company, Inc., of Highland Park for sales taxes and interest in excess of $3,000 covering a period from July 1, 1952, through April 30, 1953. The assessment was upheld after

hearing by a referee and the seller appealed to the State board of tax appeals where, after hearing, that body reversed the determination and assessment of the department of revenue, appellee here, and voided the assessment. The department of revenue then appealed to the circuit court for Ingham county, as provided by statute,* which in turn reversed the State board of tax appeals and entered judgment for the department of revenue. This appeal has resulted.

The present controversy grows out of a sale of 50 Chevrolet tractors by seller to Complete Auto Transit Company, Inc., destined for ultimate delivery out of the State. (A tractor, in the sense it is used here, is a rubber-wheeled truncated-appearing motor vehicle consisting of little more than the motor, cab and the wheels, to which various types of trailers may be attached for the movement of freight and goods, the tractor itself being primarily a source of power used to haul trailers.) The buyer requested that the 50 tractors be brought from Flint to Detroit so that the Gabriel Steel Company and other processors could attach a fifth wheel and do other work before the tractors left the State. (It appears that a fifth wheel, as used here, is a metal plate or universal connecting device mounted on the rear of tractors to which trailers may be attached.) The work was done and the tractors were there attached to trailers purchased from other sources and the entire units were then transported by various common carriers to the buyer in St. Louis, Missouri, and other points designated by it out of the State of Michigan. The orders for the tractors were made from the Detroit office of the buyer in Michigan.

A full dress hearing was held before the State board of tax appeals; witnesses were produced by

---

* CL 1948, § 205.9 (Stat Ann 1950 Rev § 7.657[9]).—REPORTER.

both sides; the exhibits are rather voluminous; and the transcript of the testimony taken at the hearing consumes 53 pages in the printed record before us. Following the hearing briefs were submitted on both sides. In a formal opinion taking up the better part of 4 pages in the printed record the State board of tax appeals posed the question as follows:

"The controversy concerns the question of delivery of * * * tractors, appellant claiming that they were delivered to Complete Auto Transit Company, Inc., outside of the State of Michigan at points in Ohio and Missouri, appellee claiming delivery was made within the State of Michigan. If delivery was made outside of Michigan no tax is due under the Michigan sales tax act, PA 1933, No 167, as amended (CL 1948 and CLS 1952, § 205.51 et seq. [Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 7.521 et seq.]); if delivery was made within Michigan, the sales tax is due and owing."

The board in its opinion then proceeded to make certain findings of fact. It found that all of the tractors were sent directly from the Chevrolet plant in Flint to the Gabriel Steel Company in Detroit; that there fifth wheels were added and that in a few instances certain lights were attached and other minor work performed; that the tractors and trailers were then attached and moved by common carrier to destinations of the buyer in Ohio and Missouri; that no Michigan license plates were issued and no Michigan sales tax paid; that all of the tractors were titled in the States of destination and sales taxes there paid; and that the use of the word "delivered" in a letter from the buyer to the seller reminding the latter that "we have requested that these units be delivered to the Gabriel Steel Company at 13700 Sherwood, Detroit, Michigan, tagged for Complete Auto Transit Company" did not constitute an admission that delivery was to be made in

Michigan, in the legal sense. On this latter score the opinion proceeds:

"We do not feel that delivery of the tractors in question was completed within the State of Michigan. We put little or no stock in the letter, exhibit 5, quoted above, in view of the fact that it was written by the vice-president of Complete Auto Transit Company, Inc., in a business transaction, and. not by a person versed in law, using the word 'delivery' as a legal conclusion."

The board then proceeded to find that the tractors were sent to Detroit with a point of delivery to be determined for the purpose of completing them prior to final delivery; that insurance was carried on the tractors by the appellant seller from the time they left Flint to the time of their delivery to their ultimate outstate destinations; that the evidence showed that the seller at all times dealt with the tractors as belonging to it until thus delivered; that it did not title them in Michigan but rather the purchaser did in the receiving State; that sales and other taxes due were paid in the receiving State; that "at no time did appellant take any action that would indicate an intention to deliver title to these tractors any time prior to their ultimate receipt by the purchaser, Complete Auto Transit Company, Inc., in either Ohio or Missouri."

The board's opinion concludes as follows:

"We are satisfied that there was no legal delivery of these tractors within the State of Michigan. A momentary stopping for the addition of certain equipment took place, but this does not, in our opinion, constitute delivery within Michigan. To so hold would cast serious doubts as to whether there could be any valid sales outside of the State of Michigan if there were any stopping points even for greasing and oiling or incidental repairs within the State.

"We do not believe there was sufficient 'local activity' in the instant case to constitute delivery or to make the sale of these tractors in any way subject to the Michigan sales tax.

"The determination of the department of revenue is hereby reversed, the assessment is voided, and security for costs heretofore deposited with this board in the amount of $72.07 is hereby refunded."

Upon appeal to the circuit court, as noted, the decision of the State board of tax appeals was reversed, based solely upon the transcript of testimony and the exhibits sent up from below. In his opinion the circuit judge found certain new facts, found other facts contrary to those found below, and made certain interpretations and drew certain inferences from the facts and exhibits from which he concluded that there was legal delivery and completed sale in Michigan and sufficient local activity (citing *Ashton Power Wrecker Equipment Company* v. *Department of Revenue,* 332 Mich 432) in Michigan so that a Michigan sales tax would lie.

The question presented here makes it inevitable that once again we must collide head on with the vexing problem of how far our courts can go on appeals from our various administrative boards and tribunals. Once again we must grapple with the knotty problem of when a fact is or is not a fact and instead becomes a question of law. Appellant in its brief poses the problem as follows:

"The State board of tax appeals determined as a matter of fact, after hearing all the evidence and viewing the exhibits submitted, that there was not sufficient 'local activity' and that no delivery was made in Michigan. Consequently, no tax liability for the Michigan sales tax.

"It is therefore the contention of Jerry McCarthy Highland Chevrolet Company, Inc., that the honor-

able circuit court hearing this matter on review erred in making new findings of fact, as well as erring in a statement of the facts, in light of * * * CL 1948, § 205.9 (Stat Ann 1950 Rev § 7.657[9]). Quoting from the last sentence of said section:

" 'The department shall have the right of appeal from the State board of tax appeals on questions of law to the circuit court for the county of Ingham.'

"It would seem from this that the circuit court may hear matters of law only, and not of fact, this being reserved for the jurisdiction of the State board of tax appeals, before whom all witnesses and other documentary evidence is presented.

"The learned judge, after reviewing the record, made a new determination of the facts and found that there was delivery within the State of Michigan and that there was a completed sale within the State of Michigan. Obviously, there was no review of the law, but only of the facts, which is contrary to the meaning of the statute."

On this score the department of revenue has this to say in its brief:

"The appellant in its brief also argues that the court below had no right to determine that the tractors in question were properly subject to the Michigan sales tax act because it constituted a review of the facts rather than a review of questions of law. * * * A part of such concern is the factual conclusion of sufficient local activity including transfer of possession or delivery within this State. The conclusions of the board of tax appeals that there was no instate delivery in a legal sense or sufficient local activity to uphold the tax are in the nature of legal conclusions. Furthermore, since such conclusions are not supported by competent evidence (if they are deemed to be factual only), the board still committed legal error. Errors of this nature pose legal, not factual questions."

We observe that Rule No 41 of the rules and regulations adopted by the department of revenue* provides that the question of whether or not the tax on a retail sale is a burden on interstate commerce "depends primarily on the facts in each individual case," that rule continuing, in part, as follows:

"The ownership of or title to tangible personal property is transferred from the seller to the ultimate consumer at the point at which such property is surrendered to the buyer or to a carrier for purpose of transmission to the buyer with no further risk to the seller.   *   *   *

"Where a purchaser does not accept delivery or title to such property but does direct the seller to deliver it to a destination outside the State, at the risk of the seller, and the seller performs accordingly, title to such property passes at destination and is not taxable."

We are aware of looming semantic bogs when we attempt to define just when a question of fact (or ultimate fact) merges into or becomes a question of law, yet, bogs or no bogs, we cannot escape the conclusion that the legislature in its wisdom intended that upon review in these situations the court was to be limited solely to questions of law, and further that the department of revenue by its own regulations has recognized that the questions which confronted the board of tax appeals were ones largely of fact.   Under the circumstances it would seem that questions of delivery, title, possession and so-called "local activity" turn upon and are governed by what are essentially questions of fact or at most what we might call lamely, for want of a better phrase, ultimate fact.   That they might also necessarily embrace or merge into or call for certain legal

* 1954 Administrative Code, R 205.91.—Reporter.

conclusions does not lessen their essential status in this context as facts; these facts (or ultimate facts) must be found before any ultimate legal conclusions (tax liability) can possibly follow. Upon the facts found by the board of tax appeals there is no error of law in its conclusions.

Thus in *Rochester Telephone Corp.* v. *United States,* 307 US 125 (59 S Ct 754, 83 L ed 1147), Mr. Justice Frankfurter had this to say when the issue was that of "control" of one telephone company by another (pp 145, 146):

"The record amply justified the communications commission in making such findings. Investing the commission with the duty of ascertaining 'control' of one company by another, Congress did not imply artificial tests of control. This is an issue of fact to be determined by the special circumstances of each case. So long as there is warrant in the record for the judgment of the expert body it must stand. * * * 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.' " (Citing cases.)

Mr. Justice Smith has made a searching examination of this whole broad question of the proper scope of review upon appeals from administrative boards and agencies in his recent brilliant and scholarly opinion in *Knight-Morley Corporation* v. *Employment Security Commission,* 350 Mich 397, 411. It will be seen from that opinion that our legislature usually provides that our courts upon appeals from our various administrative boards and commissions may reverse only when the decision below is contrary "to the great weight of the evidence" or words of similar import. We think it is significant to observe that our legislature in this instance, when

providing for appeals by the department of revenue from the State board of tax appeals, failed to provide even that limited scope of factual review and instead restricted the court on such reviews solely to "questions of law." The situation is not unakin to that prevailing upon appeals in workmen's compensation cases, where this Court has long limited itself upon review solely to questions of law, looking at the facts only to determine whether the record contains any competent evidence whatever to support the findings of fact. We must hold that the record before us is sufficient on that score in this case.

The question, then, is not whether the State board of tax appeals reached a wise or a foolish result on the facts found by it nor whether the circuit judge or we might have reached a different result had we been charged with determining those facts. The legislature in these situations has in its wisdom chosen to clothe the State board of tax appeals with broad powers in determining the facts and, even more sharply than usual in most cases involving appeals from such agencies, has restricted the circuit court in the scope of its review. The question of whether such a provision is a wise one or not is not for us or the circuit court to say—although this writer shares with Mr. Justice Smith the feeling that if we are to have administrative boards and commissions of dignity and stature and effectiveness they must be clothed with an authority commensurate with their grave responsibilities, else they tend to become merely frustrated and expensive way stations on the road to ultimate decision. Be that as it may, in view of the foregoing we hold that the decision of the circuit court must be reversed and the decision of the State board of tax appeals rein-

·stated and affirmed, with costs to the prevailing party.

KELLY, SMITH, BLACK, and EDWARDS, JJ., con-curred with VOELKER, J.

DETHMERS, C. J., and CARR, J., concurred in the re-sult.

KAVANAGH, J., took no part in the decision of this case.